**William D. CAMPBELL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 8719.**

United States Court of Appeals Tenth Circuit.

Nov. 10, 1966.

Rehearing Denied Nov. 29, 1966.

———◆———

Lee Hornbaker, Junction City, Kan., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty. (Newell A. George, U. S. Atty., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant was one of three persons indicted for conspiring to violate the laws of the United States (specifically 18 U.S.C. § 641, embezzlement or theft of United States property) violative of the Criminal Conspiracy Statute, 18 U.S.C. § 371. The three were tried together by a jury. Appellant and Richard M. Watson were convicted. The third person, Roy Douglas Clemence, was acquitted. A the end of the trial, appellant moved for a new trial and the court overruled the motion. From the verdict of guilty, the order overruling his motion for a new trial, and the judgment and sentence of the court, appellant takes this appeal.[1]

---

1. The defendant Watson has not appealed his conviction.

The Government's evidence revealed that appellant and one of his co-defendants below, Richard M. Watson, both being members of the Armed Forces, collected quantities of ammunition at the United States Army Post at Fort Riley, Kansas. Apparently the ammunition was left over after various target exercises. Appellant and Watson later sold this ammunition to the third co-defendant, Roy Douglas Clemence, who bought and sold guns and ammunition. A Government informer, Fred McKay, bought some of the ammunition from Clemence and turned it over to the FBI. The FBI then contacted Clemence, who told them he had purchased the ammunition from Watson. Watson was contacted by the FBI and the Army's Criminal Investigation Division, and he involved appellant.

Only two questions are presented for review in this court. The first is whether or not the trial court erred in denying appellant's motion for a "copy of the evidence presented to the Grand Jury." Appellant's brief and oral argument before this court make it clear that what he wanted was a transcript of the testimony given by the witnesses who appeared before the Grand Jury. That testimony was not in any manner recorded. No reporter was present and there is no transcription of it.

■ Relying on Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, appellant asserts that the trial court's failure to order the Government to produce that testimony requires this court to reverse and grant a new trial. The Dennis case, as we have said before, does now make it "clear that the need for grand jury testimony as a useful tool of defense is, in most instances, a matter for determination by counsel and not by the court * * *." Welch v. United States, 10 Cir., 371 F.2d 287 at 294. Especially is this true in conspiracy cases. Dennis, supra. However, in the instant case, there was no testimony to produce. This fact alone distinguishes this case from Dennis. We have previously noted that we believe this pre-

sents a "clear exception to the rule announced in Dennis," Welch, supra. Since the Grand Jury testimony was not recorded, there was nothing to disclose and the trial court committed no reversible error in denying appellant's motion.

The second point relied on by appellant concerns a quantity of ammunition which the trial court, over appellant's objection, permitted to remain in the courtroom before the jury.

On the second day of the six day trial, the Government brought into the courtroom a quantity of ammunition, all of which had been marked and made up 32 proposed Government exhibits. The Government was able to connect Clemence with all of the exhibits but failed to prove Government ownership as to exhibits 7 through 17. The remaining 21 exhibits were properly identified and admitted into evidence. All 32 exhibits did remain in the courtroom throughout the trial and in the effort of the Government to identify the 11 unadmitted exhibits many references were made to them by Government counsel and witnesses.

Appellant objected to the entirety of the ammunition the Government brought into court at the time it was wheeled in. The court overruled the objection, saying:

"THE COURT: Well, I don't know how we are going to make a determination of this, gentlemen, without having it in here. If it does appear to the Court that the Government has exceeded the due bounds of discretion in bringing it in, the Court will consider your motions at that time. For the present it will be overruled."

Appellant made no further objection to the evidence until after the Government had rested its case in chief. At that time, appellant's counsel moved for a mistrial on the ground that appellant had been prejudiced by the court allowing the exhibits not received in evidence to remain in the courtroom before the jury. The other two defendants then joined in

the same motion. The court, in overruling their motions, said:

"THE COURT: Well, of course, gentlemen, on that theory the Court would have to declare a mistrial any time the Government brought in any evidence that they didn't succeed in identifying properly or produce being in evidence. The Court can't believe that the jury could have gained or could have been prejudiced in their consideration of this case simply because there was some exhibits that the Government wasn't able to establish and put in evidence. The Court observed no activity on the part of the Government which in any way the Court feels would amount to prejudicial conduct or such conduct as would prejudice you. The Court is going to have to overrule your motions for a mistrial."

Sometime after the trial was concluded and the jury had convicted appellant, he moved for a new trial. At that time he again asserted the prejudicial effect the ammunition which was not received in evidence had on the jury. The court, in overruling the motion, said that there was no indication of bad faith on the part of the Government in bringing in the exhibits it was not able to get admitted into evidence.

 The trial court permitted all the ammunition to remain in the courtroom so that it could make a determination as to each exhibit's admissibility when the Government offered it. At the close of the Government's case in chief, the trial court said:

"If the defendants wish any of the exhibits which have not been received into evidence to be removed from the courtroom, I think that should be done."

Evidently, no effort was made to remove the exhibits not received in evidence until after the trial was concluded. The exhibits complained of were not brought up to this court, so we can only guess as to the quantity and description of ammunition which made up exhibits 7 through 17. We must note that appellant did not think those exhibits to be so prejudicial as to require specific instruction by the court. No request was made by appellant for the court to instruct the jury about the fact that the complained of exhibits were not evidence. Nor did appellant object because the trial court did not give such an instruction. On the facts of this case we cannot say that the trial court's permitting exhibits 7 through 17 to remain in the courtroom amounts to reversible error.

Affirmed.